[Civ. No. 1575. Fourth Appellate District.—February 8, 1936.]

CHARLES B. CARPENTER, Appellant, v. FIRST TRUST & SAVINGS BANK OF PASADENA (a Corporation) et al., Respondents.

Charles D. Swanner for Appellant. .

Porter & Sutton for Respondents.

MARKS, J.—This is an appeal from a judgment in an action to cancel and rescind two contracts for the sale and purchase of real property, and to recover the money paid by plaintiff on account of the purchase prices. The complaint contains two causes of action, identical in form, each pertaining to a contract. In each count fraud and deceit, and partial failure of consideration, are alleged as grounds of recovery. The trial court found against plaintiff on all grounds. Apparently plaintiff has abandoned the question of fraud and deceit on appeal as it is not argued in his brief. Our examination of the record discloses that the evidence on this question preponderates in favor of defendants. We will, therefore, confine ourselves to a consideration of the question of partial failure of consideration.

William H. Burnham and others were trustors in a trust agreement wherein the First Trust and Savings Bank of Pasadena, which we will refer to as the bank, was trustee. The subject of the trust consisted of a number of lots at the easterly end of Balboa peninsula in the city of Newport Beach, in Orange County, title to which was vested in the bank. While the terms of the trust do not appear in the record we infer that it was a subdivision trust. Blankenhorn Realty Company was the exclusive agency through which the lots were sold. As the question of fraud and deceit was resolved in favor of defendants in the trial court and is not seriously argued on appeal, the correctness of the judgment in favor of Blankenhorn Realty Company cannot be questioned here as we have before us merely the matter of the partial failure of

the consideration of a contract to which the agent was not a party nor was it paid the money which is sought to be recovered. We will treat the case as though the bank were the sole defendant. (*Ware* v. *Frank Meline Co.*, ■(Cal. App.) 53 Pac. (2d) 1033.)

In May, 1923, the southerly, or ocean, side of the easterly end of the Balboa peninsula was a vacant sand spit with a rock breakwater extending from its easterly extremity westerly into the ocean. This breakwater had been constructed by public agencies. In that year this portion of the peninsula was subdivided into lots and blocks with the usual streets and alleys. This subdivided property became part, if not all of, the *corpus* of the trust estate, title to which was held by the bank.

In August, 1924, plaintiff became the purchaser of lot 1 in block D, and lot 19 in block E of this subdivision under two written conditional sales contracts in which the bank appeared as seller. The contracts were identical in terms, except as to prices, payments, and the respective descriptions of the lots. Both provided that the bank at its own cost and expense would cause to be constructed and installed the water mains, gas mains, conduits for electric wiring, alleys, cement sidewalks and curbs and streets, together with a board walk along the ocean frontage of the properties. It is admitted that these improvements were all installed and paid for by the bank.

In the fall of 1924 the shore end of the breakwater began to sink and continued to do so during 1925 and 1926 to such an extent that the waves and tides broke over it, cross currents were set up and considerable portions of the two lots in question were washed away. All of the improvements constructed under the contract that served lot 1 in block D were washed out, and those serving lot 19 in block E were either washed away or rendered useless by being disconnected from the main system, excepting about sixty-five feet of the paving, curbing and sidewalk on the easterly side of the lot. It is admitted that the washing of the lots and the destruction of the improvements happened through no fault of either of the parties to the contracts.

During the summer of 1927 the city of Newport Beach caused the breakwater to be repaired and raised and a rock revetment to be extended for about three hundred feet westerly along the water front. It passed about thirty feet oceanward from lot 19 in block E and protected it from overflow and further washing, but deflected the waves westerly along the beach so that lot 1 in block D was so washed that it was completely submerged. In the summer of 1930 the city of Newport Beach caused groins to be constructed at each end of, and at right angles to, the revetment. This broke up the waves and currents which had been washing away lot 1, block D and the adjoining property. The city also dredged sand from the channel at the easterly end of the peninsula and caused it to be deposited along the ocean side of blocks D and E so that all the sand that had been washed away was replaced. The trial court found "that as a result of said work all said lots in Blocks 'D' and 'E' have been made higher, drier, better and safer than at the time said plaintiff and defendant bank entered into said agreement of purchase and sale".

The trial court found also that by reason of the surface of the lots being washed away "they were rendered temporarily unsuitable for residence purposes, and, by reason thereof, the consideration for said contracts failed in a material respect". Just what was in the mind of the trial judge in making this finding or what effect should be given to it does not clearly appear, for in the previous finding he found that after the groins were constructed and the lots filled by the city they were "higher, drier, better and safer" than when the contracts were executed. The notice of rescission was not given by plaintiff until almost a year after the lots had been filled by the city.

The trial court further found "that in the latter part of November, 1927, after all the damage to said lots had been done, and after plaintiff had knowledge thereof, plaintiff wrote defendant bank as follows: 'I hope to be able to bring my contracts up to date about January 10th. Will that be O. K.? Yours truly C. B. Carpenter,' and thereby elected to treat said contracts as in full force and effect, notwithstanding the damage theretofore done to said lots. That in September, 1929, said plaintiff paid $400 interest on said contracts, paying the interest thereon up to August 15, 1929, and thereby elected to

treat said contracts as still in force''. The trial court drew the following conclusion of law from the finding: ''That plaintiff has waived the right to rescind the contracts Exhibits A and C annexed to his complaint, and each of them''.

The notice of rescission was dated August 19, 1931, and the action was commenced on December 2, 1933. Plaintiff challenges the conclusion of the trial court that the cause of action was barred by the provisions of subdivision one of section 339 of the Code of Civil Procedure, as well as the conclusions of ratification of the contracts after partial failure of consideration had occurred, and waiver of the right to rescind after the right of rescission accrued.

It is admitted that the improvements which were damaged, washed out or destroyed by the waves and tides have not been reconstructed and that it will cost a considerable sum to replace them. We take it that this is the only partial failure of consideration that can be seriously urged and not the washing away of the surface of the lots which had been fully repaired about a year before the notice of rescission was given.

After all the damage had been done to the lots and the improvements, and after plaintiff had full knowledge of it, he made a substantial payment to the bank on July 21, 1927. In addition he wrote defendant in November, 1929, asking if it would be satisfactory for him to pay up his delinquent instalments at a later specified date. He also made a substantial payment in 1929. It is, therefore, evident that the challenged finding of ratification and waiver is supported by the evidence unless plaintiff had some valid excuse for his conduct.

The general rule concerning the waiver or loss of the right to rescind is stated in 25 Cal. Jur. 725, as follows: ''A purchaser may waive or lose his right to rescind, whether it is given him by law or by express provision in his contract. . . . Whether a party has acted promptly depends upon the circumstances of the particular case, and is a question primarily for the trial court. A purchaser may rescind notwithstanding delay occasioned by negotiations with reference to the cancellation of the contract, or by promises on the part of the vendor to cure the defect complained of, but not where, after discovery of the facts justifying a rescission, he conducts himself as though the contract were still subsisting, as where he

enters into new arrangements with the vendor, recognizes the validity of notes and mortgages given for the purchase money, or elects to pay the balance of the price and demands a deed.''

In the case of *Wilson* v. *Beazley*, 186 Cal. 437 [199 Pac. 772], the Supreme Court had before it the question of the waiver of the right to rescind for partial failure of consideration because part of the soil of the property in controversy was washed away by a flood. It was there said: ''Assuming for the purpose of discussion, and without deciding, that the alleged injuries to the land in suit caused by the floods constituted a cause of rescission, nevertheless the duty devolved upon the plaintiff to effect a rescission, if he were entitled to the same, with promptness. (Civ. Code, sec. 1691, subd. 1.) The failure to exercise reasonable diligence in this regard, after notice of the accrual of the right, will defeat the rescission. (*Ferguson* v. *Edgar*, 178 Cal. 17 [171 Pac. 1061].) A considerable interval of time ensued between plaintiff's first knowledge of the destruction caused by the flood and his attempted rescission. Moreover, plaintiff not only failed to promptly notify defendant that he declined to proceed with the purchase, but, in December, 1916, almost a year after the last flood, elected to tender the balance of the purchase price and demand a conveyance of the property at that time. When plaintiff did serve notice of rescission on December 2, 1916, it was based solely upon defendant's alleged refusal to accept plaintiff's tender and inability to furnish a clear title to the property. Having affirmed the contract after knowledge of the damage caused by the floods, plaintiff is precluded from claiming a failure of consideration or a right of rescission because of that damage.''

In *Evans* v. *Duke*, 140 Cal. 22 [73 Pac. 732], the rule is laid down that a purchaser has but one election to rescind which must be exercised promptly after discovery of the facts giving him that right; that if, after discovering the facts, he conducts himself as though the contract were valid and in full force he waives all right of election to rescind, based on the known facts.

To escape these well-established rules plaintiff urges that his actions did not constitute a waiver because during the entire time the ''bank, or its agents, were urging plaintiff to make his payments and delay taking any action for rescission of said contracts, as it would see that the improve-

ments were replaced upon the lots". The findings negative this contention.

This argument by plaintiff is supported by his testimony, which was flatly contradicted by witnesses for the bank. These witnesses testified that the only representations made to plaintiff on this subject were to the effect that efforts were being made to get the city of Newport Beach or another public agency to protect the lots from washing and replace the improvements; that no representations were made that the bank, the trustors, or anyone else would replace the improvements. The trial court accepted the evidence of the bank's witnesses as true. The question was one of the weight and sufficiency of the evidence and the credibility of witnesses which must be determined by the trial judge. (*Cross* v. *Mayo,* 167 Cal. 594 [140 Pac. 283].) It was resolved by him adversely to the contention of plaintiff. We are controlled by the findings on questions of fact where they are supported by competent and material evidence.

As the findings which we have already considered are sufficient to support the judgment it is unnecessary to review the other specifications of error.

An order denying a motion for new trial is not appealable. (Sec. 963, Code Civ. Proc.)

The judgment is affirmed and the appeal from the order is dismissed.

Barnard, P. J., and Jennings, J., concurred.